**SECURITIES AND EXCHANGE COMMISSION, Plaintiff,**

v.

**J & B INDUSTRIES, INC., et al., Defendants.**

**Civ. A. No. 74–4250–M.**

United States District Court, D. Massachusetts.

Nov. 5, 1974.

Willis Riccio, SEC, Boston, Mass., for plaintiff.

Alan J. Cushner, Cushner & Gadsby, Boston, Mass., for defendants American Investment Management Co. and Ronald Jarvis.

Warren G. Miller, Boston, Mass., for defendant H & R Industries, Inc.

## MEMORANDUM

MURRAY, District Judge.

This case came on to be heard on plaintiff's motion for preliminary injunction against defendants American Investment Management Company (AIM) and Ronald Jarvis. In support of the motion plaintiff Securities and Exchange Commission (SEC) has submitted the complaint and accompanying affidavit, a memorandum of fact and law and oral argument. Defendants opposed the motion by oral argument and by their brief.

### I

Upon consideration of the presentations of the parties the court, without purporting to finally determine the facts in dispute, finds that plaintiff has made a sufficient showing of the likelihood after a full hearing of success upon the merits of its complaint. AIM is an investment company operated under the supervision of Jarvis and employing about 18 securities salesmen. AIM has never registered with SEC as a broker/dealer, although it is a member of the National Association of Securities Dealers. Since February 1972, AIM and Jarvis have engaged in selling investment contracts of American Industrial Research Corporation (AIRCO). No registration statement was filed with SEC regarding AIRCO contracts, which are investment securities relating to land in Canada for industrial park development. AIM's salesmen under Jarvis' supervision sold AIRCO contracts, and represented that purchasers thereof could double or triple their investment; that various industrial concerns were interested in repurchasing the contracts, including Ferroplan Aktiengesellschaft (Ferroplan) who had opened an escrow account of $300,000 to evidence its good faith; that the venture was riskless due to a guaranteed refund on demand by purchasers; that the land had almost doubled in value. On September 17, 1973, Ferroplan executed an "offer to purchase" addressed to purchasers, which referred to land sold by AIRCO through "its Broker Agent . . . AIM". SEC contends that the land was overvalued and its value misrepresented, and that the purchasers who sought refunds were denied them. Jarvis admitted the sales to SEC investigators in the Spring of 1974. Jarvis and AIM have remained in the general securities business and intend to continue in it.

### II

The purpose of injunctive relief is to prevent injury to the public and future violations of remedial statutes, and not to punish past offenders. United States v. W. T. Grant Co., 345 U.S. 629, 633, 73 S.Ct. 894, 97 L.Ed. 1303 (1953); SEC v. National Student Marketing Corp., 360 F.Supp. 284, 297 (D.D.C.1973). In a securities case, the injunctive relief is a creature of statute, and thus the traditional equity requirement that irreparable injury be shown is inapplicable. SEC v. Torr, 87 F.2d 446, 450 (2d Cir. 1937). To obtain relief SEC must meet the "proper showing" standard of the statutes,[1] that is, it must present a prima facie case of violation of the securities laws with a reasonable likelihood that the violation will be repeated. Mere cessation of the unlawful conduct, even if accompanied by expressed intent to refrain from future unlawful conduct, will not defeat an injunction if "there exists some cognizable danger of recurrent violation". United States v. W. T. Grant Co., *supra* 345 U.S. at 633, 73 S.Ct. at 898. Fraudulent conduct committed in the past may give rise to an inference of recurrent violations. SEC v. National Student Marketing Corp., *supra* 360 F.Supp. at 300; SEC v. Manor Nursing Centers, Inc., 458 F.2d 1082, 1100 (2d Cir. 1972); SEC v. Keller Corp., 323 F.2d 397, 402 (7th Cir.

---

1. Section 20(b) of the Securities Act of 1933 (15 U.S. § 77a et seq.) and section 21(e) of the Securities Exchange Act of 1934 (15 U.S.C. § 78 et seq.).

1963); SEC v. Globus International, Ltd., 320 F.Supp. 158, 160 (S.D.N.Y. 1970).

## III

The showing made by SEC as to the violations—fraud, failure to register as broker/dealer, and dealing in unregistered securities—demonstrate blatant violations. Defendants AIM and Jarvis do not contend that they could not have known they were selling items which should have been registered with SEC. Defendants participated in the sale of the unregistered AIRCO contracts, without themselves registering as broker/dealers, for over two years prior to March 1974. Although AIM and Jarvis claim to have voluntarily ceased the AIRCO sales after Ferroplan defaulted on its option contract in March 1974, the SEC investigation was proceeding at that time, and it is not clear that the defendants' decision to cease and desist was not prompted by their knowledge of that investigation.

■ AIM and Jarvis deny they were party to the fraud charged against all defendants by SEC. Jarvis argues he was justified in relying upon information available to him, and that he was himself diligent in investigating AIRCO. It is unlikely, however, that Jarvis, aided by his business experience and with information as to AIRCO available to him, could have failed to discover during his diligent investigation what SEC examiners found. AIM and Jarvis were closely related to AIRCO during the two-year period when the fraudulent scheme was flowering. J & B Industries, Inc. and AIRCO paid rent and other bills for AIM, AIM's salesmen made the representations to induce purchase of the AIRCO contracts, and AIM was held out by Ferroplan as a "Broker Agent" of AIRCO. The close relations between them would appear to give AIM and Jarvis ample opportunity to assess the character of the whole scheme from their point of view as an investment company and as the sales agent of AIRCO. If neither were parties to what appears in the strong showing made by SEC as a fraudulent scheme, they were inexcusably careless in the representations they made to the purchasers of AIRCO securities.

■ AIM and Jarvis argue that injunctive relief against them will serve no purpose since (1) AIRCO is already enjoined and only AIRCO can complete and close AIRCO contracts, and (2) they are bound by the injunction against AIRCO as AIRCO's agents. But these are not answers to the claim by SEC for injunctive relief against defendants AIM and Jarvis to prevent future violations by their selling *other* unregistered securities, by their engaging as unregistered broker/dealers in sales of *other* securities, and by fraud in *other* sales. The acts sought to be thus enjoined are of the same type and class as the unlawful acts demonstrated in this proceeding and fall properly within the scope of injunctive relief. NLRB v. Express Publishing Co., 312 U.S. 426, 61 S.Ct. 693, 85 L.Ed. 930 (1941).

■■ *Although* SEC has argued that Jarvis' admitted refusal to talk with its examiners in 1974 demonstrates his bad faith, the court declines to infer his bad faith from that refusal because of his explanation that he was then without counsel and he declined to talk for that reason. *Cf.* SEC v. Harwyn Publishing Corp., CCH Fed.Sec.L.Rep. ¶ 91,401 (S.D.N.Y.1964). The professional harm to the defendants AIM and Jarvis in their future business, which is urged as a reason to refuse injunctive relief, is, of course, a factor to be weighed in light of the legitimate demands for protection of the public interest. Defendants cannot claim that their involvement with AIRCO's securities was a single isolated transaction, or that SEC's charge against them of wrongdoing is spun out of a novel theory of liability. *See* SEC v. National Student Marketing Corp., *supra* 360 F.Supp. at 299. SEC's prima facie showing of the seriousness of the past violations of AIRCO over an appreciable part of two years prior to the time SEC commenced its investi-

gation, coupled with the close relationship during all of the two-year period among Jarvis, AIM and AIRCO, makes a strong case of need for protection of the public interest. The cessation of AIM's and Jarvis' association with AIRCO only when SEC had undertaken an investigation is not persuasive on the disclaimer of future intent; and especially is this so when a bona fide investigation, which they say they conducted, should have alerted them to AIRCO's violations at an earlier time. Since upon the showing made by SEC the past conduct of AIM and Jarvis gives rise to the likelihood of future violations, and since the overriding need for protection of the public interest outweighs the likelihood of professional harm to defendants, the injunctive relief is granted.