**SECURITIES & EXCHANGE COMMISSION**

v.

**PENN CENTRAL CO. et al.**

**C. A. No. 74–1125.**

United States District Court, E. D. Pennsylvania.

Dec. 28, 1976.

25. T.T. at 180; *see also* T.T. at 175–76.

26. T.T. at 187.

27. H.T. at 22.

28. H.T. at 88.

29. H.T. at 118.

595

Benjamin Greenspoon, William H. Kuehnle, Neil S. Lang, Securities & Exchange Commission, Washington, D. C., Thomas H. Monahan, Securities & Exchange Commission, Philadelphia, Pa., for Government.

Donald J. Farage, Farage & Shrager, Philadelphia, Pa., for Penn Central Co.

Edward C. German, Joseph G. Manta, LaBrum & Doak, Philadelphia, Pa., for Bevan.

Cecil A. Morgan, Morgan, Gambill & Owen, Fort Worth, Tex., Gerald L. McMahon, San Diego, Cal., for Ray.

Darrell E. Jordan, James S. Ramsey, Jr., Jordan, Ramsey & Bradley, Dallas, Tex., for Baker.

Richard U. Simon, Simon & Simon, Fort Worth, Tex., for Caldwell.

Andrew Mutch Knowlton, Pechner, Sacks, Dorfman, Rosen & Richardson, Philadelphia, Pa., John L. Hauer, Robert E. Goodfriend, Woodrow M. Bonesio, Atkin, Gump, Strauss, Hauer & Feld, Dallas, Tex., for Wynne.

## OPINION

JOSEPH S. LORD, III, Chief Judge.

Plaintiff, the Securities and Exchange Commission ("SEC"), alleges that various

corporate and individual defendants, by virtue of numerous acts and omissions, have violated section 17(a) of the Securities Act of 1933 [15 U.S.C. § 77q(a)], sections 10(b) and 13(a) of the Securities Exchange Act of 1934 [15 U.S.C. §§ 78j(b), 78m(a)] and Rules 10b–5 and 13a–1 promulgated by the SEC [17 C.F.R. §§ 240.10b–5, 240.13a–1]. Six of the defendants have filed motions to dismiss and for summary judgment.

The moving defendants are: Penn Central Co. ("Penn Central"), a Pennsylvania holding company which during the relevant period owned all of the stock of the Penn Central Transportation Co. ("Transportation Co."); William C. Baker, a past director and president of Macco Realty Co. ("Macco") and director and chief executive officer of Great Southwest Corp. ("GSC"); [1] David C. Bevan, a past officer of the Pennsylvania Railroad Co.,[2] chairman of the finance committees of Penn Central and Transportation Co., director of Transportation Co. and director of GSC; H. L. Caldwell, a past officer of GSC and officer and director of Macco; William D. Ray, a past officer of GSC and officer and director of Macco; and Angus G. Wynne, Jr., a past president and chairman of the board of directors of GSC. Penn Central filed for reorganization under Chapter XI after this suit and the motions involved herein were filed.[3] An order staying all proceedings against Penn Central was entered on August 16, 1976. Therefore, we will not consider the motions of Penn Central at this time. Any reference hereafter to "defendants" shall be deemed to be the moving defendants exclusive of Penn Central.

Plaintiff seeks a permanent injunction and disgorgement of allegedly unlawfully obtained money. Defendants argue that the SEC is not entitled to injunctive relief because there is no danger of future violations of the securities laws such as would be prevented by the injunctive relief sought.

Defendant Wynne contends, in addition, that the injunctive relief sought by the complaint is moot. All defendants maintain that the SEC claims for disgorgement should be dismissed because such claims are ancillary to injunctive relief and, therefore, inappropriate because injunctive relief is improper in their cases. Defendants assert that the SEC's right to claim disgorgement is only secondary, the primary right belonging to private litigants. They also argue that the SEC claims for disgorgement are a penalty or punitive in nature and thus should be denied. Defendants Wynne and Baker contend that the SEC is barred by laches from seeking disgorgement. Defendant Baker argues that the settlement of prior litigation between himself and GSC extinguishes and bars the SEC suit herein. Defendant Wynne asserts that the complaint should be dismissed as to him for failure to comply with Fed.R.Civ.P. 9(b).

### I. Injunctive Relief

 Congress has given the SEC power to seek injunctive relief under both the Securities Act of 1933, 15 U.S.C. § 77t, and the Securities Exchange Act of 1934, 15 U.S.C. § 78u. Such a statutory grant must be construed in accord with "all those considerations of fairness and justice that have been the historic concern of the equity courts." *SEC v. Harwyn Industries Corp.,* 326 F.Supp. 943, 955, 958 (S.D.N.Y.1971). The critical question is whether there is a reasonable likelihood of future violations. *United States v. W. T. Grant Co.,* 345 U.S. 629, 633, 73 S.Ct. 894, 97 L.Ed. 1303 (1953); *SEC v. Shapiro,* 494 F.2d 1301, 1308 (2d Cir. 1974). The fact that the defendants have committed violations of the securities laws, and for the purposes of a summary judgment motion we assume that is true, gives rise to the inference that there is a reasonable likelihood of future violations. *SEC v. First American Bank & Trust Co.,* 481 F.2d

---

1. Macco and GSC were, during the relevant period, affiliated with Penn Central or its subsidiaries.

2. The Pennsylvania Railroad Co. was a predecessor of the Transportation Co.

3. *In the Matter of Penn Central Co.,* Debtor-in-Possession (Bankruptcy No. 76–1469).

673, 682 (8th Cir. 1973); *SEC v. Manor Nursing Centers, Inc.,* 458 F.2d 1082, 1100 (2d Cir. 1972); *SEC v. Keller Corp.,* 323 F.2d 397, 402 (7th Cir. 1963); *SEC v. J & B Industries, Inc.,* 388 F.Supp. 1082, 1084 (D.Mass.1974). *Cf. Tanzer v. Huffines,* 408 F.2d 42, 43 at n. 1 (3d Cir. 1969).

█ A number of factors have been considered as bearing on the likelihood of future violations. These include: (1) the nature of the past violations, including the number, seriousness and novelty of the transgressions, the motive and intent of the perpetrators, and the time elapsed since the violations were committed, *SEC v. Datronics Engineers, Inc.,* 490 F.2d 250, 255 (4th Cir. 1973), *cert. denied,* 416 U.S. 937, 94 S.Ct. 1936, 40 L.Ed.2d 287 (1974); *SEC v. Manor Nursing Centers, Inc., supra* at 1100–01; *SEC v. National Student Marketing Corp.,* 360 F.Supp. 284, 297–300 (D.D.C. 1973); (2) whether defendants have admitted their guilt or continue to maintain their past conduct was blameless, *SEC v. First American Bank & Trust Co., supra* at 682; *SEC v. Manor Nursing Centers, Inc., supra* at 1101; *SEC v. MacElvain,* 417 F.2d 1134, 1137 (5th Cir. 1969), *cert. denied,* 397 U.S. 972, 90 S.Ct. 1087, 25 L.Ed.2d 265 (1970); (3) whether defendants discontinued the wrongful activity only at the threat of an investigation or after the filing of a complaint, *SEC v. Manor Nursing Centers, Inc., supra* at 1101; *SEC v. Keller Corp., supra* at 402; (4) the sincerity of defendants' assurances that they will not violate the federal securities laws in the future,[4] *SEC v. Manor Nursing Centers, Inc., supra* at 1101; *SEC v. National Student Marketing Corp.,* 402 F.Supp. 641, 652 (D.D.C.1975); and (5) defendants' opportunity to commit further violations, *SEC v. Shapiro, supra* at 1308; *SEC v. Pearson,* 426 F.2d 1339, 1343 (10th Cir. 1970); *SEC v. National Student Marketing Corp.,* 360 F.Supp. at 300.

█ Since all defendants have submitted affidavits regarding the propriety of injunctive relief, we will treat their motions to dismiss under Rule 12 and their motions for summary judgment under Rule 56 solely as motions for summary judgment under Rule 56. Where a movant initially sustains its essential burden of showing that there is no genuine issue of material fact, the opposing party, to avoid summary judgment, must present evidentiary facts in opposition or state by affidavit a legitimate basis for its inability to do so. *Scooper Dooper, Inc. v. Kraftco Corp.,* 494 F.2d 840, 848 (3d Cir. 1974); *United States ex rel. Tyrrell v. Speaker,* 471 F.2d 1197, 1202–03 (3d Cir. 1971). "It is not enough to rest upon the uncertainty which broods over all human affairs or to pose philosophic doubts regarding the conclusiveness of evidentiary facts." *Robin Construction Co. v. United States,* 345 F.2d 610, 614 (3d Cir. 1965).

█ We find that defendant Wynne has met his burden in establishing the justification for summary judgment on the issue of injunctive relief. Defendant Wynne submitted an affidavit, dated November 15, 1974, which states that "he is not an officer, director, or employed in any manner by a public company; that he is not currently engaged in business activities which involve publicly traded securities; that due to the state of his health * * * he is not likely to have officer or director relationship to a public company in the future." Two medical doctors supported defendant Wynne's claim of poor health.[5]

Despite ample opportunity to dispute defendant Wynne's evidence, and without a legitimate excuse for failing to produce any facts to counter the contentions of Mr. Wynne, the government merely asserts that the defendant has the ability to violate the law and that it is reasonably likely that he

---

4. This is a factual question whose determination is not usually appropriate on summary judgment. *SEC v. National Student Marketing Corp.,* 360 F.Supp. at 299.

5. According to the affidavits submitted by defendant Wynne's doctors, Mr. Wynne suffers from diabetic neuropathy, partial paralysis of his left side following an acute stroke in 1971, progressive arteriosclerosis and high blood pressure. He is unable to withstand emotional strain without an elevation in blood pressure and has some difficulty communicating due to the stroke.

will do so in the future. We disagree. We have no reason to doubt Mr. Wynne's evidence to the contrary.[6] Our position is similar to the court's in *SEC v. National Student Marketing Corp.*, 360 F.Supp. at 300, where the court entered summary judgment for two defendants who were retired and, with minor exceptions, were not connected with the securities field or with the management of any public corporation, and for a third defendant who still practiced law but had no involvement in any corporate or securities-related activity and was approaching retirement. All three defendants had claimed that they were not and did not expect to be directors or insiders in any public company.

Defendants Baker, Bevan, Caldwell and Ray also have submitted affidavits regarding their current personal affairs in support of their motions. But given the allegedly heinous nature of their past violations and the fact that we are not convinced that these defendants will not have future opportunities to violate the securities laws, we will deny their motions for summary judgment.

■ Within this group, defendant Bevan submitted the most convincing affidavit. He swore on June 20, 1974 that "he is sixty-eight years of age and virtually retired; that he is not an officer or employee of any corporation; that he is not a director or in control of any publicly held corporation; that he is a director (outside) of only one corporation which is a wholly-owned subsidiary of Transway International Corporation; and that he is not an officer, director or employee of Transway International Corporation." However, defendant Bevan did not state his intention not to serve as an officer or director in a publicly traded company in the future. We do not consider his age alone to be a sufficient showing that there is no reasonable likelihood that he will commit future violations of the securities laws. Indeed, at the

time of the affidavit Bevan was serving as a director of a corporation.

■ The Baker, Caldwell and Ray affidavits merely disclaim any present or intended future special knowledge of, relationship with or connection to the defendant corporations and their subsidiaries and affiliates. We have no reason to believe that these three defendants are not in positions or will not be in positions with other corporations where they can violate the federal securities laws. The motions of defendants Baker, Bevan, Caldwell and Ray for summary judgment on the claims for injunctive relief will be denied.

## II. Disgorgement

Defendants maintain that the SEC claims for disgorgement should be dismissed because they are ancillary to injunctive relief which relief is improper in their cases. Such a contention is no longer appropriate for defendants Baker, Bevan, Caldwell and Ray since we will deny their motions for summary judgment as to the SEC claims for permanent injunctions against them. But the issue is pertinent to defendant Wynne against whom the claim for a permanent injunction will be dismissed. Additionally, all five defendants argue that the SEC claims for disgorgement are punitive in nature and therefore impermissible. Defendants Wynne and Baker contend that the SEC is barred by laches from seeking disgorgement.

Restitution has been ordered as an ancillary remedy pursuant to the general equity power of courts. *Mitchell v. Robert DeMario Jewelry*, 361 U.S. 288, 292, 80 S.Ct. 332, 4 L.Ed.2d 323 (1960); *United States v. Moore*, 340 U.S. 616, 619–20, 71 S.Ct. 524, 95 L.Ed. 582 (1951); *Porter v. Warner Holding Co.*, 328 U.S. 395, 398–99, 66 S.Ct. 1086, 90 L.Ed. 1332 (1946). The Second Circuit has held that the SEC can seek disgorgement under the equity jurisdiction granted it in the 1933 and 1934 Acts. *SEC v. Shapiro, supra* at 1309; *SEC v. Manor Nursing Cen-*

6. Having determined that the SEC is not entitled to an injunction against defendant Wynne because there is no reasonable likelihood that he will commit future violations of the securities laws, we need not consider whether the injunctive relief sought is moot.

*ters, Inc., supra* at 1103–04; *SEC v. Texas Gulf Sulphur Co.,* 446 F.2d 1301, 1307–08 (2d Cir.), *cert. denied,* 404 U.S. 1005, 92 S.Ct. 561, 30 L.Ed.2d 558 (1971), *reh. denied,* 404 U.S. 1064, 92 S.Ct. 733, 30 L.Ed.2d 753 (1972); *SEC v. Commonwealth Chemical Securities, Inc.,* 410 F.Supp. 1002, 1021 (S.D. N.Y.1976); *SEC v. Golconda Mining Co.,* 327 F.Supp. 257, 259 (S.D.N.Y.1971). Other courts also have found that the SEC has the power to seek disgorgement. *SEC v. General Refractories Co.,* 400 F.Supp. 1248, 1260 (D.D.C.1975); *SEC v. R. J. Allen & Associates,* 386 F.Supp. 866, 880–81 (S.D.Fla.1974).

■ Disgorgement depends on the proper invocation of equity jurisdiction. When defendants are shown to have violated the federal securities laws, disgorgement may be ordered to effectuate the enforcement of the laws by assuring that violations are not profitable. Defendants are incorrect when they argue that disgorgement can only be ordered where primary injunctive relief has been granted. In *Texas Gulf Sulphur* disgorgement was ordered against both enjoined and non-enjoined defendants and in *Manor Nursing Centers* disgorgement was ordered though none of the defendants was enjoined.

■ We reject the contention that the SEC seeks disgorgement for punitive reasons. The relief sought is remedial, depriving defendants of the rewards they obtained by violating the securities laws. Such action serves to protect the investing public by providing an effective deterrent to future violations.

■ The fact that defendants have been sued in private litigation based on the same allegations as those made by the SEC does not make the relief sought any less remedial. Private suits do not necessarily restore the status quo.[7] Disgorgement contemplates total recovery from the wrong-doer, not recovery that may be partial or limited to a few of the total number injured or subject to a compromise of actual damages. Obviously the SEC cannot be estopped by any prior suits since it was not a party to such actions. To the extent that defendants have made restitution, the amounts paid would serve to offset part or all of a judgment for disgorgement. In the event that we deem disgorgement appropriate, defendants will have the opportunity to prove that they have already relinquished their ill-gotten gains.

■ Historically, state statutes of limitations and laches do not run against the United States unless the government specifically consents. *United States v. Summerlin,* 310 U.S. 414, 417, 60 S.Ct. 1019, 84 L.Ed. 1283 (1940). However, those defenses are applicable against the government where it is seeking to vindicate purely private rights. *United States v. Georgia Power Co.,* 474 F.2d 906, 922–23 (5th Cir. 1973). But this action is not one where the government seeks to serve as a conduit for individual claimants. Rather, it is a case where the government is acting in accordance with its public responsibilities on behalf of the public interest. *Cf. Nabors v. NLRB,* 323 F.2d 686, 688–90 (5th Cir. 1963), *cert. denied,* 376 U.S. 911, 84 S.Ct. 666, 11 L.Ed.2d 609 (1964). The SEC in bringing this action is attempting to enforce effectively the federal securities laws under its statutory mandate. It is true that if the government prevails and disgorgement is ordered, private parties may be able to claim some of the disgorged funds. But this is not predominantly an action for restitution for the benefit of private parties. The fact that one consequence of the action may be to benefit private parties does not detract from the public purpose of effectuating the goals of the securities laws. Defendants' motions to dismiss the disgorgement action will be denied.

---

7. The SEC had announced it would not seek disgorgement in this case if it felt that defendants had made appropriate contributions to the settlement of the private cases, *In re Penn Central Securities Litigation,* MDL 56. It is our understanding that the SEC continued with this suit because defendants have never disclosed the amount of money they paid into the fund.

### III. Defendant Wynne's Motion to Dismiss for Failure to Comply with Rule 9(b)

Defendant Wynne has moved to dismiss under Fed.R.Civ.P. 12 for failure to state a cause of action alleging that the SEC has failed to comply with Fed.R.Civ.P. 9(b) by not pleading fraud with sufficient particularity. He maintains that the SEC does not state in the complaint: "(1) who purchased or sold stock in connection with defendant Wynne's alleged concealment, and when such purchases or sales took place; (2) what precisely was concealed and from whom; (3) whether such concealment was under circumstances making it deceptive, and if so, what the circumstances were; (4) who was injured as a result of the concealment; (5) what causal nexus, if any, exists between the alleged concealment and any resultant injury; and (6) whether defendant is one of those who 'intended to conceal' the alleged improperly recorded income, and if so, what acts he did in furtherance thereof." Defendant Wynne's Brief in Support of his Motion to Dismiss and/or for Summary Judgment at 35–36.

Defendant Wynne is charged, in plaintiff's sixth cause of action, with violation of § 17(a) of the Securities Act, § 10(b) of the Securities Exchange Act and Rule 10b–5 promulgated thereunder. The only specific allegations involving defendant Wynne, outside of one paragraph which merely tracks the statutory language in conclusionary terms, are: (1) he received compensation pursuant to his 1968 employment agreement which compensation was based on improperly recorded income of Macco; and (2) he renegotiated his employment contract in 1969 receiving $3 million in cash for doing so. (It is alleged that the purpose of this settlement payment was to conceal the improper recording of income).

■ While we hold a very liberal view of pleading requirements, see Denny v. Carey, 72 ɪ R.D. 574 (E.D.Pa.1976), this complaint fails to inform defendant Wynne in what way he violated the securities laws. He is not specifically accused of improperly recording income for the purpose of giving a false and misleading picture of the corporation nor of having knowledge of the allegedly fraudulent scheme nor of participating in any way, even negligently, in the furtherance or cover up of the illegal activities. Accepting compensation pursuant to an employment agreement and receiving $3 million for renegotiating that agreement raise no inference of guilt. The complaint as to defendant Wynne will be dismissed unless within thirty days plaintiff files an amended complaint sufficient to give defendant Wynne notice of the fraud of which he is accused.