**NATIONAL WESTMINSTER BANCORP NJ, Plaintiff,**

v.

**Rita Girolamo LEONE, Dr. Armand Leone, Peter Leone, Ri–Arm Corp. and Pam Associates, Defendants.**

**Civ. A. No. 88–2000.**

United States District Court, D. New Jersey.

Nov. 7, 1988.

Cole, Schotz, Bernstein Meisel & Forman, P.A., Morrill J. Cole, Hackensack, N.J., for defendants.

James R. Van Horn, Jersey City, N.J., for plaintiff.

## OPINION

SAROKIN, District Judge.

In this action brought under Section 16(b) of the Securities and Exchange Act of 1934 ("1934 Act"), 15 U.S.C. Sec. 78p(b), for alleged "short-swing" profits realized by defendants, defendants move for summary judgment. Plaintiff cross-moves for partial summary judgment.

## BACKGROUND

Plaintiff National Westminster Bancorp NJ ("Natwest NJ"), formerly known as First Jersey National Corporation ("First Jersey"), brought this action under Section 16(b) of the 1934 Act as the issuer of securities. The complaint demands disgorgement of alleged "short-swing" profits made by defendants Dr. Rita Girolamo Leone, Dr. Armand Leone, Peter Leone, Ri–Arm Corp. and PAM Associates. Rita Girolamo Leone was a member of the board of directors of First Jersey when the transactions relevant to this action took place. First Jersey's common stock traded on NASDAQ. Defendant Armand Leone is the husband of Rita Girolamo Leone and they share the same home. Defendant Peter Leone is their son. Ri–Arm Corp. is a corporation whose common stock is approximately 26%–owned by Rita Girolamo Leone and 25%–owned by Dr. Armand Leone.[1] PAM Associates is a partnership in which Mark Leone, Peter Leone, and Armand Leone, Jr. are the partners.

On August 5, 1987, First Jersey released to the public a plan of merger under which each of the company's shares would be exchanged for $82 in cash. In the two days preceding the public announcement, Armand Leone purchased for the accounts of Ri–Arm Corp. and himself a total of 11,750 shares of First Jersey common stock. Purchases of a total of 8,350 shares of First Jersey common stock were also made on August 3 and 4, 1987 for accounts in the names of Peter Leone, Armand Leone, Jr., Mark Leone and PAM Associates. These shares were all exchanged for cash on February 1, 1988 at the rate of $82 per share.

---

1. There is some confusion among the parties with respect to the ownership of the common stock of Ri–Arm Corp. Plaintiff's complaint alleges that the ownership is as follows: Rita Girolamo Leone—36%; Dr. Armand Leone—25%; Mark Leone—13%; Peter Leone—13%; Armand Leone, Jr.—13%. Complaint, Paragraph 8. However, in plaintiff's memorandum of law in opposition it is asserted that Ri–Arm Corp. is "99%–owned by Rita Leone and her husband." Plaintiff's memorandum in opposition, p. 3, citing A. Leone Tr. at 8–10; R. Leone Tr. at 13. Defendants' state in their memorandum of law in support of their motion at page 3 that Ri–Arm Corp. is "owned by Armand and Rita Leone and their sons, Peter, Mark and Armand, Jr." However, in their Rule 12(G) statement in opposition to plaintiff's application for summary judgment, Paragraph 1, defendants state that Ri–Arm Corp. is 50%–owned by Rita Girolamo Leone, 49%–owned by Armand Leone, and 1%–owned by Sinibaldo Leone (Armand Leone's brother). Finally, at oral argument, counsel for defendants requested to amend their 12(G) statement, stating that Rita Girolamo Leone's share in Ri–Arm Corp. was 26%, not 50%.

Rita Girolamo Leone first became informed of the merger negotiations on or about July 15, 1987, when she attended a meeting of the First Jersey board of directors and obtained documents regarding the proposed merger from First Jersey's chief executive officer. She brought the documents home with her that evening. From July 17, 1987 to July 31, 1987, Armand Leone purchased 3,700 shares of First Jersey common stock for the accounts of Ri–Arm Corp., Ri–Arm Farm, Inc., Peter Leone, Armand Leone, Jr., and Mark Leone.

On August 2, 1987, Rita Girolamo Leone received notice that a special meeting of the First Jersey board was scheduled for August 4, 1987. A draft merger agreement and other materials relating to the proposed merger were distributed to the members of the First Jersey board of directors on August 3, 1987, and Rita Girolamo Leone reviewed them at home. On August 4, 1987, the First Jersey board reviewed the merger agreement and voted unanimously to approve it. As noted above, on August 3 and 4, 1987, Armand Leone purchased 11,750 shares of First Jersey stock for his and Ri–Arm Corp.'s accounts, and 8,350 shares for the accounts of his three sons. A public announcement of the plan was made on August 5, 1987, and the exchange pursuant to the merger took place on February 1, 1988.

On April 21, 1988, the SEC filed a complaint against Rita Girolamo Leone and Armand Leone, alleging violations of Section 10(b) of the Securities and Exchange Act of 1934 ("1934 Act"), 15 U.S.C. Sec. 78j(b), and Rule 10b–5 promulgated thereunder. The alleged violations involved the purchase of securities of First Jersey in accounts in their own names or in which they had beneficial interests, made on the basis of material non-public information about the proposed merger.

Rita and Armand Leone each executed a consent and undertaking on April 15, 1988, in which they consented to the entry of final judgment in the SEC action. The consent final judgments were filed by the SEC on April 22, 1988. Pursuant to the judgment, the Leones were ordered to "disgorge $774,302.00 representing the gross profits from the purchase of First Jersey National Corp. securities from July 17 through August 4, 1987 as described in the Complaint." Affidavit of Julian W. Friedman submitted in support of defendants' motion, Exhibit C. The SEC complaint alleged that this amount consisted of $500,128.00 in profits made in the Leones' and their family's accounts, and the remainder was attributable to profits made by alleged "tippees" of the Leones. In addition, the Leones were ordered to pay $480,916.00 in settlement of the SEC's claim for a civil penalty under the Insider Trading Sanctions Act of 1984.

Plaintiff alleges that the SEC's figure of $500,128.00 for the profits of the Leone family realized through the above transactions is substantially lower than the proper calculation of profits under Section 16(b), which would be based on a rate of $82 per share. Affidavit of Robert Kushner in opposition to defendants' motion for summary judgment, Paragraph 8. Also, according to plaintiff, the SEC's figures are lower than what the proper measure of disgorgement should be in a 10(b) and 10b–5 action.[2] *Id.*, note 2. Plaintiff states that the SEC has denied its request under the Freedom of Information Act for information concerning its calculations of the "gross profits" in the complaint and consent judgments entered by the Leones.

Plaintiff brought this action in May of 1988, requesting disgorgement to the plaintiff of profits earned by defendants through "short-swing" trades in First Jersey's stock. Plaintiff's first claim is based on Section 16(b) liability for the securities purchased by the Leone family on August 3 and 4, 1987 and exchanged for cash on February 1, 1988. Plaintiff's second claim is based on liability for breach of the state common law fiduciary obligations with re-

---

**2.** The proper measure per share would be $77, or the closing market price on the day the   merger plan was publicly announced.

spect to securities bought by the Leone family before the terms of the merger were made public and after Rita Girolamo Leone had obtained information on the proposed merger (i.e., between July 15, 1987 and August 5, 1987).

Defendants now bring this motion for summary judgment, arguing that all profit realized from the transactions at issue has already been disgorged in the prior SEC action; that the exchange of the First Jersey stock pursuant to the merger on February 1, 1988 was not a "sale" within the terms of Section 16(b); and that insider trading by a director is not a compensable breach of the director's fiduciary duty to the corporation under New Jersey common law. Plaintiff cross-moves for partial summary judgment against defendant Rita Girolamo Leone for the short-swing profits resulting from trades in the Ri–Arm Corp. account and in her husband's account.

### DISCUSSION

#### I. Defendants' Motion for Summary Judgment

The first issue that must be decided with respect to the defendants' motion for summary judgment is whether the prior action by the SEC and the settlement thereunder precludes any recovery by the corporation in this action. The consent judgment entered into between the SEC and the defendants provided for payment of $774,302.00 as disgorgement of profits from purchases of stock by the Leone family and their "tippees" during the period from July 17, 1987 through August 4, 1987. Although the SEC complaint alleged that $500,128.00 of that amount consisted of the profits from the accounts of the Leone family and entities controlled by the family, no basis for that calculation has been provided to plaintiff by the SEC. In addition to disgorgement of the above amount representing gross profits, the Leones were obligated to pay a civil penalty of $480,916.00. The SEC complaint and the consent order were grounded in allegations made by the SEC of violations of Section 10(b) of the 1934 Act and Rule 10b–5 promulgated thereunder.

Defendants claim that the payment of $774,302.00 to the SEC in the Section 10(b) action now precludes any recovery of profits by the corporation under Section 16(b) of the 1934 Act. Having paid the settlement over to the SEC, defendants claim that there are no "profits" remaining that can be "disgorged", even if liability is found to exist. Defendants assert that a recovery by plaintiff in this action would force double liability on defendants. Plaintiff argues, on the other hand, that the purposes of Section 16(b) would be frustrated by prohibiting recovery to the corporation.

■ Section 16(b) provides:

(b) For the purpose of preventing the unfair use of information which may have been obtained by ... [a] beneficial owner, director, or officer by reason of his relationship to the issuer, any profit realized by him from any purchase and sale, or any sale and purchase, of any equity security of such issuer (other than an exempted security) within any period of less than six months shall inure to and be recoverable by the issuer....

Thus, Section 16(b) creates an express statutory remedy in the corporation for disgorgement of profits realized in "short-swing" trading by insiders. The statute was designed primarily "to protect the general investing public and shareholders against short-swing speculation by insiders with advance information." *Marquette Cement Manufacturing Co. v. Andreas*, 239 F.Supp. 962, 965 (S.D.N.Y.1965). With this purpose in mind, courts have held that the remedy under Sec. 16(b) is limited to removal of the profit realized by insiders and does not include the infliction of a penalty. *See e.g., Allis–Chambers Manufacturing Co. v. Gulf & Western Industries, Inc.*, 527 F.2d 335, 357 (7th Cir.1975), *cert. den.*, 423 U.S. 1078, 96 S.Ct. 865, 47 L.Ed.2d 89 (1976).

■ Liability for restitution of unlawfully obtained profits under Section 10(b) of the 1934 Act, on the other hand, is not expressly provided for in the statute. Rather, courts have implied a restitutionary measure of damages in Sec. 10(b) and

Rule 10b–5 actions as a function of the court's inherent equity power to grant relief ancillary to an injunction. *See SEC v. Texas Gulf Sulphur Co.*, 312 F.Supp. 77, 91 (S.D.N.Y.1970), *affirmed in relevant part, rev'd in part*, 446 F.2d 1301 (2d Cir.1971); *SEC v. Penn Central Co.*, 425 F.Supp. 593 (E.D.Pa.1976). Thus, the disgorgement of profits provided for in the consent judgment in the suit brought by the SEC was an appropriate remedy under Sec. 10(b).

No cases have been cited by either party which address the exact issue raised by the facts of this case, where a corporation attempts to recover its statutory remedy under Sec. 16(b) after the SEC has already brought and settled a separate suit for disgorgement under Sec. 10(b) and Rule 10b–5. However, an analysis of cases touching on closely-related issues shows that the imposition of double liability on the defendants in this case would be outside the intent of Section 16(b).

In *SEC v. Penn Central*, the SEC brought a Sec. 10(b) action for disgorgement of profits made by defendants through unlawful trading after the defendants had already settled private suits against them. The court stated, "The fact that the defendants have been sued in private litigation based on the same allegations as those made by the SEC does not make the relief sought any less remedial. Private suits do not necessarily restore the status quo." 425 F.Supp. at 599. In a footnote, the court added that the SEC had asserted that it would not have asked for disgorgement unless it felt that the defendants had not made appropriate settlements in the private cases. The court then went on to say:

Disgorgement contemplates total recovery from the wrongdoer, not recovery that may be partial or limited to a few of the total number injured or subject to a compromise of actual damages. Obviously the SEC cannot be estopped by any prior suits since it was not a party to such actions. To the extent that defendants have made restitution, the amounts paid would serve to offset part or all of a judgment for disgorgement. In the event that we deem disgorgement appropriate, defendants will have the opportunity to prove that they have already relinquished their ill-gotten gains.... It is true that if the government prevails and disgorgement is ordered, private parties may be able to claim some of the disgorged funds."

*Id.*

Similarly, in *Pappas v. Moss*, 303 F.Supp. 1257 (D.N.J.1969), plaintiffs asserted common law, Sec. 10(b), and Sec. 16(b) claims. Judge Wortendyke found the defendants liable under the common law and Sec. 10(b) claims, and thus held that there was no need to address liability under Sec. 16(b). The court stated, "Since damages are only recoverable once for a transaction involving two violations of law, there will be no recovery by the corporation under Sec. 16(b) because defendants ... were held liable under both the 10(b)(5) and the common law counts and damages computed thereunder will be larger than damages computed under 16(b)." *Id.* at 1281. Although this decision would tend to imply that defendants could not be held liable under both 10(b) and 16(b), in *Pappas* both claims were brought by the corporation in one suit and thus all damages were to be paid to the corporation.

In *SEC v. Texas Gulf Sulphur Co.*, 446 F.2d 1301 (2d Cir.1971), the court of appeals upheld the district court's award of restitution to the SEC. However, the court emphasized that the defendants were protected from double liability by the lower court's holding with respect to the manner of payment:

The payments are to be held in escrow in an interest-bearing account for a period of five years, subject to disposition in such manner as the court might direct upon application by the SEC or other interested person, or on the court's own motion. At the end of the five years any money remaining undisposed of would become the property of [the company]. To protect the appellants against double liability, any private judgments against

these appellants arising out of the events of this case are to be paid from this fund. *Id.* at 1307.

Finally, in *Morales v. Holiday Inns, Inc.*, 366 F.Supp. 760 (S.D.N.Y.1973), plaintiffs brought a derivative action on behalf of the corporation under Sec. 16(b), alleging that the corporation's prior settlement with the defendants was substantially less than the full amount of disgorgement owing to the corporation. The court assessed the fairness of the settlement under Fed.R.Civ. Proc. 23, and ultimately ordered the defendants to make additional payments to plaintiffs because the settlement was one that a court would not have approved.

Thus, courts that have ruled in similar situations have looked unfavorably upon double liability, yet have emphasized the need for total disgorgement in order to comply with the policies underlying Section 16(b). In the present case, the prior settlement with the SEC was apparently court-approved, since it was entered as a final judgment in the District Court in the Southern District of New York. However, the defendants' settlement with the SEC was not as clearly drafted as the court order in *SEC v. Texas Gulph Sulphur* was, and does not provide protection to either the defendants (from double liability) or the plaintiff (from preclusion of its right to obtain complete disgorgement under Sec. 16(b)). The SEC settlement does, however, contain the following language:

> The moneys [disgorged by defendants] shall be deposited with the Court within seven (7) days of the entry of this Final Judgment and distributed pursuant to a Court-approved plan to be proposed by the Commission, but in no event shall the monies disgorged revert, directly or indirectly, to ARMAND LEONE, SR., [RITA

GIROLAMO LEONE, or their] heirs or assigns.

Affidavit of Julian W. Friedman in support of defendants' motion, Exhibit C. It is unclear from the judgment itself and the papers submitted by the parties what the terms of disbursement were anticipated to be when the agreement was made or what they might be in the future.

■ As suggested in the *Penn Central* decision cited above, plaintiff may be able to claim some of the disgorged funds paid over to the SEC pursuant to the settlement. However, plaintiff has raised an issue of material fact with respect to the adequacy of the prior settlement. Plaintiff points out that the settlement figure of $500,-128.00 for the Leone family's gross profits is not explained by the SEC and shows no relationship to standard disgorgement calculations under either Sec. 10(b) or Sec. 16(b).

Plaintiff has alleged in its complaint that it is entitled to disgorgement under 16(b) of *all* profits made by the Leone family from purchases of First Jersey stock made on August 3 and 4, 1987. It has also alleged entitlement under state common law to disgorgement of *all* profits made by the Leone family from purchases made beginning on July 17, 1987 through the public announcement on August 5, 1987. If plaintiff should prevail on both claims with respect to all of the family accounts, plaintiff alleges that it would be entitled to more than the SEC recovered in disgorged profits pursuant to the settlement. Defendants have asserted that all of the profits realized in the transactions at issue were disgorged to the SEC.[3] Thus, the court is presented with a genuine issue of material fact which cannot be resolved on a motion for summary judgment.[4]

---

**3.** Defendants conceded at oral argument and in their reply brief, page 9, note * *, that an issue of fact has been presented with respect to the completeness of the disgorgement to the SEC, and stated that partial summary judgment for defendants would be appropriate, leaving open the issue of the amount of profits not yet disgorged.

**4.** The court recognizes that the refusal of the SEC to supply information regarding its calcula-

tion of profits makes it difficult to characterize the payments already made to the SEC. However, the plaintiff should be given an opportunity to prove the amount of profits it should be entitled to based on general Sec. 16(b) and common law principles of calculating profits to be disgorged. Assuming it can prove liability, if plaintiff can show that the SEC settlement unreasonably compromised the amount defendants were obligated to pay in disgorgement, then plaintiff would be entitled to receive the

The next issue that must be decided with respect to the defendants' motion for summary judgment is whether the exchange of stock for cash under the merger agreement constitutes a "sale" for the purposes of Section 16(b) liability. The statute imposes strict liability on all covered transactions, "regardless of the intent or existence of actual speculation." *Bershad v. McDonough*, 428 F.2d 693, 696 (7th Cir.1970). *See also, Reliance Electric Co. v. Emerson Electric Co.*, 404 U.S. 418, 92 S.Ct. 596, 30 L.Ed.2d 575 (1972). However, in "unorthodox" transactions such as the merger in this case, the question of whether a transaction is a "sale" for the purposes of imposing Sec. 16(b) liability must be resolved by looking to the goals of the statute. *Kern County Land Co. v. Occidental Petroleum Corp.*, 411 U.S. 582, 595, 93 S.Ct. 1736, 1745, 36 L.Ed.2d 503 (1973). In *Kern County*, the Court decided that the exchange of shares pursuant to a merger, under the facts of that case, was not a "sale" subjecting the defendant to Sec. 16(b) liability. However, the court stated:

> We do not suggest that an exchange of stock pursuant to a merger may never result in Sec. 16(b) liability. But the involuntary nature of Occidental's exchange, when coupled with the absence of inside information, convinces us that Sec. 16(b) should not apply to transactions such as this one.

*Id.* at 600, 93 S.Ct. at 1747.

Courts interpreting *Kern County* have held that where a purchase or sale is the result of an unorthodox transaction and an analysis of the transaction shows *no possibility* of short term speculative abuse, the transaction is not covered by Sec. 16(b). *See e.g., Allis–Chambers*, 527 F.2 at 351; *Oliff v. Exchange International Corp.*, 449 F.Supp. 1277 (N.D.Ill.1978). *Oliff* further articulated the analysis to be applied, stating:

> The test for the possibility of speculative abuse is whether the executors had both access to inside information and some measure of influence over the timing and circumstances of the transaction suffi-

cient to give the possibility of profits based on inside information.

*Id.* at 1296.

In the present case, plaintiff has alleged sufficient facts to show access to inside information and *some measure* of influence over the transaction sufficient to give the possibility of profits based on non-public information. Rita Girolamo Leone was a director of First Jersey and was provided with confidential documents about the proposed merger. Two days later, her husband began buying substantial amounts of stock for the family's accounts. When approval by the board was imminent, Armand Leone purchased even more stock. Once the public announcement of the merger was made, the stock price rose. When the exchange pursuant to the merger ultimately took place, the cash value of the stock was greatly increased from the original purchase price paid by Dr. Leone. As noted in a similar fact situation, the defendant "had knowledge of certain inside information that would have helped him to predict the future performance of [the company's] stock; such knowledge is the source of his 'possibility of speculative abuse.'" *Gold v. Sloan*, 486 F.2d 340, 352 (4th Cir.1973).

■ The court finds that, applying the pragmatic test of *Kern County*, the facts as alleged by plaintiff are sufficient to show a possibility of speculative abuse. Defendants assert that Rita Girolamo Leone had no control over the timing of the transaction, and thus Sec. 16(b) liability should not apply. However, all that is required is *some* measure of control. Even where a defendant's control over the circumstances of the sale were seriously restricted, if the eventuality of such a sale was foreseeable by the defendant, liability has been imposed. *See, e.g., Makofsky v. Ultra Dynamics Corp.*, 383 F.Supp. 631, 642 (S.D.N.Y.1974). As a director of First Jersey, Rita Leone was in a position to make suggestions as to the terms of the merger and to influence other directors on the board. She voted to approve the merger. Thus, plaintiff has alleged a sufficient basis in fact to overcome defendants' mo-

difference between the actual profits made by

defendants and the amount paid to the SEC.

tion for summary judgment on grounds that no "sale" took place within the terms of Sec. 16(b). Of course, defendants may be able to show at trial that Rita Leone exercised no control over the transaction, but this is a question of fact that cannot be decided at this time.

■ Finally, defendants argue that plaintiff's common law claims must be dismissed because the state of New Jersey has not yet recognized a compensable claim by a corporation against its directors for trading on inside information. Although defendants correctly assert that no New Jersey statute or state court case provides such a cause of action, Judge Brotman of this court has held that the New Jersey courts would find such a cause of action to exist under state law were they presented with the issue. *In re ORFA Securities Litigation,* 654 F.Supp. 1449 (D.N.J.1987). The court's decision was based on an extensive review of New Jersey case law and it concluded that the use of inside information by directors to obtain personal profit was a violation of the directors' fiduciary obligation to the corporation. Stating that the plaintiff should be given the opportunity to prove breach, harm, and causation, the court stated that the plaintiff need not prove damage to the corporation at the summary judgment stage of the proceedings. *Id.* at 1457.

In the absence of any New Jersey law indicating otherwise, this court finds Judge Brotman's decision in *ORFA* to be persuasive on the existence of a common law cause of action by the corporation against a corporate director for profits gained from trading on inside information. As in *ORFA,* the presence or absence of harm to the corporation's goodwill, or any other measurable harm to the corporation, will be left for the parties to debate at trial.

## II. Plaintiff's Motion for Partial Summary Judgment

■ Plaintiff's cross-motion for partial summary judgment against Rita Girolamo Leone under Sec. 16(b) for the short-swing profits resulting from trades in the Ri-Arm Corp account and in her husband's account

is premature. Genuine issues of material fact exist which preclude granting partial summary judgment to plaintiff.

There is no dispute that the purchases on August 3 and 4, 1987 and the exchange on February 1, 1988 fell within a six-month period. However, in order for Sec. 16(b) liability to be imposed on the defendant, the exchange must be a "sale" within the intent of the statute and the profits realized must be attributable to the corporate insider. Although plaintiff alleged sufficient facts to overcome defendants' motion for summary judgment on the issue of whether the exchange was a "sale", on plaintiff's motion the facts must be viewed most favorably to defendants. Defendants have alleged that Rita Girloamo Leone exercised no control over the terms and conditions of the merger. There is thus an issue of material fact as to whether or not the exchange transaction was one that presented the possibility of speculative abuse and was therefore a "sale" for the purposes of Sec. 16(b) liability.

Even if the transaction were found to be a "sale", plaintiffs have not alleged sufficient facts to show beyond dispute how much, if any, of the profit in both Armand Leone's account and Ri-Arm Corp.'s account can be attributed to the insider, Rita Leone. Whether or not she held a beneficial interest at all in her husband's account is a question of fact that will depend on the extent to which she had access to and control over the account or whether the account was habitually used to pay for common expenses of the household. *See, e.g., Whiting v. Dow Chemical Co.,* 523 F.2d 680, 686–7 (2d Cir.1975); *Whittaker v. Whittaker Corp.,* 639 F.2d 516, 526 (9th Cir.1981); *CBI Industries Inc. v. Horton,* 682 F.2d 643, 646–7 (7th Cir.1982). These facts are in dispute and thus cannot be resolved on this motion.

Defendant Rita Girolamo Leone's liability for profits made in the Ri-Arm Corp. account will depend on her beneficial interest in the corporation. At present, the extent of her holding of the corporation is at issue. *See supra,* note 1. Even if her ownership interest in the corporation was

certain, there is a question of fact regarding whether the corporate profit of Ri–Arm Corp. flows directly to Ms. Leone as a shareholder of the corporation in this case. *See e.g., Blau v. Lehman,* 368 U.S. 403, 82 S.Ct. 451, 7 L.Ed.2d 403 (1962) (partner liable for proportionate share of partnership's profits in 16(b) action against partner); *Rattner v. Lehman,* 193 F.2d 564 (2d Cir.1952). If Rita Leone directly profited from a short-swing trade under Sec. 16(b) as a shareholder in Ri–Arm Corp., she will be liable for disgorgement in an amount proportionate to her beneficial interest in the corporation. Also, the attribution of her husband's share of the Ri–Arm Corp. profits will depend on the outcome of the above analysis of whether she, through her status as his wife and access to his profits, has a beneficial interest in any profits realized by him as a shareholder of Ri–Arm Corp. The total amount which would have to be disgorged cannot be determined upon the facts available to the court at this time, even if the exchange were to be deemed a "sale" and liability imposed on Rita Leone.

CONCLUSION

Defendants' motion for summary judgment is granted in part and denied in part. Defendant's motion is granted in that plaintiff may not recover from defendants any profits already disgorged to the SEC in the prior action, but plaintiff may attempt to prove the insufficiency of the SEC settlement and recover any difference between actual profits and the amount disgorged to the SEC. Defendants have not shown beyond dispute that the exchange pursuant to the merger was not a "sale" under Sec. 16(b), and thus that portion of their motion is denied. Similarly, defendants' motion for dismissal of the pendant state law claims is denied.

Because issues of material fact remain to be resolved, plaintiff's cross-motion for partial summary judgment is denied.